

**U.S. Department of Justice**

*Andrew E. Lelling*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

July 10, 2018

George F. Kelly, Esq.
930 Main Street
Springfield, MA 01103

      Re:    United States v. Emil Kaufman
             <u>Criminal No. 18-300   - MGM</u>

Dear Mr. Kelly:

      The United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Emil Kaufman ("Defendant"), agree as follows with respect to the above-referenced case:

      1.    <u>Change of Plea</u>

      At the earliest practicable date, but in no event later than July 24, 2018, Defendant shall waive indictment and plead guilty to the Information attached to this Plea Agreement charging him with: Count One:  Possession Of Material Involving The Sexual Exploitation Of Minors, in violation of Title 18, United States Code, Section 2252(a)(4)(B).  Defendant expressly and unequivocally admits that he committed the crime charged in Information, did so knowingly and is in fact guilty of the offense charged in Count One.  Defendant also agrees to waive venue, to waive any applicable statute of limitations, and to waive any legal or procedural defects in the Information.

      The U.S. Attorney agrees not to charge Defendant pursuant to Title 18, United States Code, Section 2252(a)(2) (Receipt/Distribution Of Material Involving The Sexual Exploitation Of Minors) based on the conduct underlying the crime charged in this case that is known to the U.S. Attorney at this time and to dismiss the Complaint in *United States v. Emil Kaufman*, Criminal No. 13-mj-03067-KAR.

      Defendant agrees to the accuracy of the attached statement of facts.

1

2.     <u>Penalties</u>

Defendant faces the following mandatory minimum and maximum penalties on the one count of the Information:  incarceration for up to 20 years; supervised release for at least five years and up to life; a fine of $250,000, or twice the gross gain/loss, whichever is greater; a mandatory special assessment of $100; a mandatory special assessment of $5,000 pursuant to 18 U.S.C. § 3014; restitution; and forfeiture to the extent charged in the Information.

Defendant also recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including the offense to which Defendant is pleading guilty.  Indeed, because Defendant is pleading guilty to Possession of Child Pornography, removal is presumptively mandatory.  Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including defense counsel and the District Court, can predict to a certainty the effect of this conviction on Defendant's immigration status.   Defendant nevertheless affirms his decision to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is Defendant's automatic removal from the United States.

Defendant understands and agrees that as a consequence of his conviction for the crime to which he is pleading guilty, he will be required to register as a sex offender, and to keep that registration current, in the place where he resides, where he is employed, and where he is a student, pursuant to the Sex Offender Registration and Notification Act, and the laws of the state of his residence. Failure to do so may violate the terms of his supervised release and subject him to new criminal charges pursuant to 18 U.S.C. § 2250.

3.     <u>Fed. R. Crim. P. 11(c)(1)(C) Plea</u>

This Plea Agreement is made pursuant to Fed. R. Crim. P. 11(c)(1)(C), and Defendant's guilty plea will be tendered pursuant to that provision.  In accordance with Rule 11(c)(1)(C), if the District Court ("Court") accepts this Plea Agreement, the Court must include the agreed disposition in the judgment.  If the Court rejects any aspect of this Plea Agreement, the U.S. Attorney may deem the Plea Agreement null and void.  Defendant understands and acknowledges that he may not withdraw his plea of guilty unless the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5).

4.     <u>Sentencing Guidelines</u>

The parties agree jointly to take the following positions at sentencing under the United States Sentencing Guidelines ("USSG" or "Guidelines").  The parties agree that Defendant's total adjusted offense level under the Guidelines is calculated as follows:

- in accordance with USSG § 2G2.2(a), Defendant's base offense level is 18, because his offense of conviction is 18 U.S.C. § 2252(a)(4)(B);

- in accordance with USSG § 2G2.2(b)(2), Defendant's offense level is increased by 2, because the offense involved a minor under the age of 12;

- in accordance with USSG § 2G2.2(b)(4), Defendant's offense level is increased by 4, because the offense involved material that portrays sadistic or masochistic conduct;

- in accordance with USSG § 2G2.2(b)(6), Defendant's offense level is increased by 2, because the offense involved the use of a computer; and

- in accordance with USSG § 2G2.2(b)(7)(C), Defendant's offense level is increased by 4, because the offense involved between 300 but fewer than 600 images.; and

- in accordance with USSG § 3E1.1, based on Defendant's prompt acceptance of personal responsibility for the offense of conviction in this case, the adjusted offense level is reduced by three.

The U.S. Attorney's agreement that the disposition set forth below is appropriate in this case is based, in part, on Defendant's prompt acceptance of personal responsibility for the offense of conviction in this case.

The U.S. Attorney may, at his sole option, be released from his commitments under this Plea Agreement, including, but not limited to, his agreement that Paragraph 5 constitutes the appropriate disposition of this case, if at any time between Defendant's execution of this Plea Agreement and sentencing, Defendant:

(a)     Fails to admit a complete factual basis for the plea;

(b)     Fails to truthfully admit Defendant's conduct in the offense of conviction;

(c)     Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under USSG § 1B1.3;

(d)     Fails to provide truthful information about Defendant's financial status;

(e)     Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which

3

Defendant is accountable under USSG § 1B1.3;

(f)     Engages in acts that form a basis for finding that Defendant has obstructed or impeded the administration of justice under USSG § 3C1.1;

(g)     Intentionally fails to appear in Court or violates any condition of release;

(h)     Commits a crime;

(i)     Transfers any asset protected under any provision of this Plea Agreement; or

(j)     Attempts to withdraw Defendant's guilty plea.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

5.     <u>Agreed Disposition</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the U.S. Attorney and Defendant agree that the following is a reasonable and appropriate disposition of this case:

(a)     Incarceration for a period of time-served.

(b)     A period of supervised release of 120 months, with the following special conditions:

1.     Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, Defendant shall register as a sex offender not later than 3 business days (from release or sentencing, if granted probation). Defendant will keep the registration current, in each jurisdiction where the defendant resides, is employed or is a student. Defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information. Failure to do so may not only be a violation of this condition but also a new federal offense punishable by up to 10 years imprisonment. In addition, the defendant must read and sign the Offender Notice and Acknowledgment of Duty to Register as a Sex Offender per the Adam Walsh Child Protection And Safety Act of 2006 form.

2.     Defendant shall participate in a sexual specific evaluation or sex

4

offender specific treatment, conducted by a sex offender treatment provider, as directed and approved by the Probation Office. The treatment provider shall be trained and experienced in the treatment of sexual deviancy, and follow the guideline practices established by the Association for the Treatment of Sexual Abusers (ATSA). The sexual specific evaluation may include psychological and physiological testing which may include polygraph, ABLE screening, and other types of testing, as approved by the Probation Office. Defendant shall disclose all previous sex offender or mental health evaluations to the treatment provider. Defendant shall also contribute to the costs of the evaluation, according to his ability, as determined by the Probation Office. When submitting to a polygraph exam, the defendant does not waive his Fifth Amendment rights, and the defendant's exercise of such rights will not give rise to a violation proceeding. The results of the polygraph examinations may not be used as evidence in Court to prove that a violation of community supervision has occurred, but may be considered in a hearing to modify release conditions and/or could initiate a separate investigation.

3.   Defendant is not to possess or use a computer, internet-capable device, or similar electronic device without the prior permission of the Probation Office. Any device previously mentioned should not be used to access child pornography or to communicate with any individual or group for the purpose of promoting sexual relations with children. Defendant is prohibited from entering chat rooms, to send or receive "instant messages," or to send or receive email with attached electronic files through any electronic medium unless previously approved by the Probation Office. Defendant shall not utilize any sex-related telephone services, websites, or electronic bulletin boards.

4.   Defendant shall allow the installation of a computer and internet monitoring program and/or identify computer systems, internet-capable devices, and similar memory and electronic devices to which the defendant has access (except a computer owned by his employer and not located in his residence). The program(s) used will be designed to identify, for the probation office, the viewing, downloading, uploading, transmitting, or otherwise using any images or content of a sexual or otherwise inappropriate nature. Defendant shall contribute to the cost of such monitoring services, based on the defendant's ability to pay, as deemed appropriate by the Probation Office. Defendant shall not attempt to remove or

5

otherwise defeat such systems, and shall allow the Probation Office to examine such computer and receive data from it at any reasonable time.

5.  Defendant shall advise anyone in his household that any computer in the household may be subject to computer monitoring.

6.  Defendant shall disclose all account information relative to internet access, social networking, and email, including user names and passwords, to the Probation Office. Defendant shall also, if requested, provide a list of all software/hardware on his computer, as well as telephone, cable, or internet service provider billing records and any other information deemed necessary by the Probation Office to monitor the defendant's computer usage.

7.  Defendant shall provide the probation officer with access to any requested financial information for purposes of monitoring their compliance with the imposed computer access/monitoring conditions, including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills.

8.  Defendant shall have no direct or indirect contact with children under the age of 18, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense, and who has been approved by the Probation Office. Defendant shall not have any direct or indirect contact with the victims. Should the defendant have incidental contact with a child or the victims, the defendant is required to immediately remove himself from the situation and notify his probation officer. The prohibitions of this sub-paragraph shall not apply to the Defendant's own biological child.

9.  Defendant shall consent to third party disclosure to any employer or potential employer concerning any computer-related restrictions that are imposed upon him, unless excused by the probation officer. Defendant shall not be employed in any capacity that may cause the defendant to come in direct contact with children, except under circumstances approved in advance by the supervising probation officer. In addition, the defendant shall not participate in any volunteer activity that may cause the defendant to come into direct contact with children, except under circumstances approved in advance by the defendant's probation officer. Contact is defined as any transaction occurring face to face, over the telephone, via mail,

6

over the internet, and any third party communication.

> 10. Prior to accepting any form of employment, the defendant shall seek the approval of the Probation Office, in order to allow the Probation Office the opportunity to assess the level of risk to the community the defendant may pose if employed in a particular capacity.

(c) no fine, based upon Defendant's inability to pay a fine;

(d) a mandatory special assessment of $5,100, which Defendant must pay to the Clerk of the Court on or before the date of sentencing (unless Defendant establishes to the Court's satisfaction that Defendant is unable to do so);

(e) restitution as ordered by the Court; and

(f) forfeiture as set forth in Paragraph 7.

6.   <u>Protection of Assets for Payment of Restitution, Forfeiture and Fine</u>

Defendant agrees not to transfer, or authorize the transfer of, any asset that has been restrained by Order of the Court in this case or any asset, whether or not restrained, that Defendant has agreed to forfeit pursuant to this Plea Agreement.

Defendant agrees not to transfer, or authorize the transfer of any other asset in which Defendant has an interest without prior express written consent of the U.S. Attorney, except for:

(a) Assets subject to superior, secured interests of innocent third parties, in which Defendant has an equity interest of less than $10,000;

(b) Ordinary living expenses necessary to house, clothe, transport and feed Defendant and those to whom Defendant owes a legal duty of support, so long as such assets do not exceed $5,000 per month; and

(c) Attorney's fees incurred in connection with this criminal case.

This prohibition shall be effective as of the date of Defendant's execution of this Plea Agreement and continue until the fine, forfeiture and restitution ordered by the Court at sentencing are satisfied in full.

If the U.S. Attorney requests, Defendant further agrees to complete truthfully and accurately the sworn financial statement enclosed with this Plea Agreement and to deliver that statement to the U.S. Attorney within 30 days of signing this Plea Agreement.

7.  Waiver of Right to Appeal and to Bring Future Challenge

(a)  Defendant has conferred with his attorney and understands that he has the right to challenge his conviction in the United States Court of Appeals for the First Circuit ("direct appeal"). Defendant also understands that, in some circumstances, Defendant may be able to challenge his conviction in a future proceeding (collateral or otherwise), such as pursuant to a motion under 28 U.S.C. § 2255 or 28 U.S.C. § 2241. Defendant waives any right to challenge Defendant's conviction on direct appeal or in any future proceeding (collateral or otherwise).

(b)  Defendant has conferred with his attorney and understands that defendants ordinarily have a right to challenge in a direct appeal their sentences (including any orders relating to the terms and conditions of supervised release, fines, forfeiture, and restitution) and may sometimes challenge their sentences (including any orders relating to the terms and conditions of supervised release, fines, forfeiture, and restitution) in a future proceeding (collateral or otherwise). The rights that are ordinarily available to a defendant are limited when a defendant enters into a Rule 11(c)(1)(C) agreement. In this case, Defendant waives any rights Defendant may have to challenge the agreed-upon sentence (including any agreement relating to the terms and conditions of supervised release, fines, forfeiture, and restitution) on direct appeal and in a future proceeding (collateral or otherwise), such as pursuant to 28 U.S.C. § 2255 and 28 U.S.C. § 2241. Defendant also waives any right Defendant may have under 18 U.S.C. § 3582 to ask the Court to modify the sentence, even if the USSG are later amended in a way that appears favorable to Defendant. Likewise, Defendant agrees not to seek to be resentenced with the benefit of any change to Defendant's Criminal History Category that existed at the time of Defendant's original sentencing. Defendant also agrees not to challenge the sentence in an appeal or future proceeding (collateral or otherwise) even if the Court rejects one or more positions advocated by any party at sentencing. In sum, Defendant understands and agrees that in entering into this Plea Agreement, the parties intend that Defendant will receive the benefits of the Plea Agreement and that the sentence will be final.

(c)  The U.S. Attorney agrees that he will not appeal the imposition by the Court of the sentence agreed to by the parties as set out in Paragraph 5, even if the Court rejects one or more positions advocated by either party at sentencing.

(d)  Regardless of the previous subparagraphs, Defendant reserves the right to claim that: (i) Defendant's lawyer rendered ineffective assistance of counsel under *Strickland v. Washington*; or (ii) the prosecutor in this case engaged

in misconduct that entitles Defendant to relief from Defendant's conviction or sentence.

8.    Waiver of Hyde Amendment Claim

Defendant is aware that 111 Stat. 2440, 2520 (1997), the so-called "Hyde Amendment," authorizes courts in criminal cases to award to certain prevailing defendants attorneys' fees and other litigation expenses.  In exchange for concessions the U.S. Attorney made in this Plea Agreement, Defendant voluntarily and knowingly waives any claim Defendant might assert under this statute based in whole or in part on the U.S. Attorney's agreement in Paragraph 1 to dismiss the Complaint in *United States v. Emil Kaufman*, Criminal No. 13-mj-03067-KAR.

9.    Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following: one Apple MacBook Pro laptop with serial number WQ024R7QATM; one 1 TB Seagate Expansion External Drive with serial number 2GHKYPTM; and one 320 GB Seagate Expansion Portable Drive with serial number 2GH2YGR6. Defendant admits that these assets are subject to forfeiture on the grounds that they constitute, or are derived from, proceeds of Defendant's offense and they were used to commit or to promote the commission of such offenses or any property traceable to such property.  Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant agrees to assist fully in the forfeiture of the foregoing assets.  Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.  In addition, if the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this

9

Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest, at any time from June 26, 2013, to the present. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney.

Defendant also agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement. Defendant agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Plea Agreement, and will not assist any third party with regard to such challenge or review.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets. Without limiting the generality of the foregoing, Defendant hereby specifically waives and releases Defendant's claims to: one Apple MacBook Pro laptop with serial number WQ024R7QATM; one 1 TB Seagate Expansion External Drive with serial number 2GHKYPTM; and one 320 GB Seagate Expansion Portable Drive with serial number 2GH2YGR6, seized by, or turned over to, the Department of Homeland Security on or after June 26, 2013, as to which, Defendant hereby acknowledges, Defendant received actual notice of administrative or civil judicial forfeiture proceedings.

10.   Information For Presentence Report

Defendant agrees to provide all information requested by the U.S. Probation Office concerning Defendant's assets.

11.   Civil Liability

By entering into this Plea Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, Defendant may have incurred or may incur as a result of Defendant's conduct and plea of guilty to the charges specified in Paragraph 1 of this Plea Agreement.

12.   Withdrawal of Plea by Defendant or Rejection of Plea by Court

Should Defendant move to withdraw his guilty plea at any time, or should the Court reject the parties' agreed-upon disposition of the case or any other aspect of this Plea Agreement, this Plea Agreement shall be null and void at the option of the U.S. Attorney. In this event, Defendant agrees to waive any defenses based upon the statute of limitations, the constitutional protection against pre-indictment delay, and the Speedy Trial Act with respect to any and all charges that could have been timely brought or pursued as of the date of this Plea Agreement.

13.    Breach of Plea Agreement

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Plea Agreement, has engaged in any of the activities set forth in Paragraph 4(a)-(j), has violated any condition of Defendant's pretrial release, or has committed any crime following Defendant's execution of this Plea Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Plea Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing.   The U.S. Attorney may also pursue all remedies available to him under the law, regardless whether he elects to be released from his commitments under this Plea Agreement.  Further, the U.S. Attorney may pursue any and all charges which otherwise may have been brought against Defendant and/or have been, or are to be, dismissed pursuant to this Plea Agreement.  Defendant recognizes that his breach of any obligation under this Plea Agreement shall not give rise to grounds for withdrawal of Defendant's guilty plea, but will give the U.S. Attorney the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements made by Defendant and any information, materials, documents or objects provided by Defendant to the government, without any limitation, regardless of any prior agreements or understandings, written or oral, to the contrary.  In this regard, Defendant hereby waives any defense to any charges that Defendant might otherwise have based upon any statute of limitations, the constitutional protection against pre-indictment delay, or the Speedy Trial Act.

14.    Who is Bound by Plea Agreement

This Plea Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

15.    Modifications to Plea Agreement

This Plea Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below.  Please also sign below as Witness.  Return the original of this letter to me.

Very truly yours,

ANDREW E. LELLING
United States Attorney

By: _____

Kevin O'Regan
Chief, Springfield Branch Office

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that (a) it accurately sets forth my plea agreement with the United States Attorney's Office for the District of Massachusetts; (b) there are no unwritten agreements between me and the United States Attorney's Office; and (c) no official of the United States has made any unwritten promises or representations to me, in connection with my change of plea. In addition, I have received no prior offers to resolve this case. I understand the crimes to which I have agreed to plead guilty, the mandatory minimum and maximum penalties for that offenses, and the Sentencing Guideline penalties potentially applicable to it. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Plea Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Plea Agreement is in my best interest.

_____
Emil Kaufman
Defendant

Date: _8.29.18_____

I certify that Emil Kaufman has read this Plea Agreement and that we have discussed its meaning. I believe he understands the Plea Agreement and is entering into the Plea Agreement freely, voluntarily and knowingly. I also certify that the U.S. Attorney has not extended any other offers to resolve this matter.

_____
George F. Kelly
Attorney for Defendant

Date: _8/29/18_____

13

**United States v. Emil Kaufman**
**Criminal No. 18-CR-300_____-MGM**
**Plea Agreement - Statement of Facts**

The United States and the defendant, Emil Kaufman, agree to the accuracy of the following statement of facts that underlie Mr. Kaufman's plea of guilty to possession of child pornography using a means of interstate commerce in violation of 18 U.S.C. § 2252(a)(4)(B). The parties agree that if this matter had proceeded to trial the United States would have proven the facts set forth below beyond a reasonable doubt and that the following facts satisfy the necessary elements of the crime to which Mr. Kaufman is pleading guilty.

<u>Background of Investigation</u>

1. On October 22, 2012, a HSI Special Agent ("SA") accessed the Giga Tribe P2P network to identify individuals who were receiving, possessing, and distributing child pornography. SA identified user "koolkidlime1991" as sharing files from numerous password protected folders entitled ""Boy and Girl," "Girls," "Jerking:cum," "Kelly," "PeeShower:Play," "Play:Suck:Sex," "Rape:Spank," "Spongebob," and "Toys:Animation." Mr. Kaufman has admitted that he was the person who used "koolkidlime1991" and a similar designation, "koolkidlime1996."

2. SA selected 12 video files of child pornography and began to download these files directly from user "koolkidlime1991." During the download of these files, the IP address of user "koolkidlime1991" was identified as 67.240.63.250.

3. The physical address of the IP address was Mr. Kaufman's address located in Stockbridge, MA (the "Premises").

1

4.   On November 19, 2012, SA reviewed a copy of the following files which

were downloaded from user "koolkidlime1991" by SA on October 22,

2012:

   a.   Title:  [MB]!!!!!NEW!!!!!Little devon 10yo cum in
        father's mouth –HOT!!!.avi
        Description:  This is a color video file with sound.
        The video shows an apparent adult male performing
        oral sex on a naked adolescent male, who is
        approximately 9-11 years of age, while he lies on a
        bed.  This video is approximately 1 minute and 20
        seconds in length.

   b.   Title:  Bibcam – boy13 wank and cum.avi
        Description:  This is a color video file without
        sound.  The video shows an adolescent male
        approximately 11-13 years of age sitting on a couch
        naked while masturbating.  The video zooms in on
        the adolescent male's penis to show the ejaculation.
        This video is approximately 40 seconds in length.

5.   On June 17, 2013, HSI SA accessed the Giga Tribe Peer to Peer file sharing network and

observed that "koolkidlime1991" was sharing files from those folders previously

identified during the October 22, 2012 download along with folders entitled "NEW,"

"Newer," and "SS."

6.   On June 17, 2013, between approximately 2:22 PM EST and 2:50 PM EST, SA selected

10 video files of child pornography from user "koolkidlime1991" and successfully

downloaded these files.  During the download of these files, the IP address of user

"koolkidlime1991" was identified as 67.248.14.143.  This IP address was located at Mr.

Kaufman's residence in Great Barrington, MA.

7.   On June 21, 2013, SA reviewed a copy of the following files which were downloaded

from user "koolkidlime1991" by SA on June 17, 2013:

   a.   Title:  mega cute cum 13yok.mov

2

Description: This is a color video file with sound. The video shows an adolescent male approximately 13 years of age sitting naked on a chair while masturbating. The video concludes with the adolescent male ejaculating into what appears to be a napkin. This video is approximately 34 seconds in length.

b. Title: 10yo_masturb(4).wmv
Description: This is a color video file with sound. The video shows an adolescent male approximately 10-12 years of age. The adolescent male is standing with his pants pulled down and his shirt lifted, exposing his penis. The adolescent male is masturbating and appears to ejaculate on the floor. This video is approximately 51 seconds in length.

## Execution of Search Warrant

8.    On June 25, 2013, SA obtained a federal warrant to search the Premises for evidence related to violations of the federal child exploitation laws.  SA executed the search warrant on June 26, 2013.

9.    According to another HSI Special Agent, during the execution of the warrant, a preliminary examination of Mr. Kaufman's computer showed that the computer's files included three videos containing child pornography.  The videos were contained in a folder with the address:  /users/koolkidlime96/documents/gigatribe.  Giga Tribe is a computer file sharing program that Mr. Kaufman told HSI Special Agents he used in relation to the transfer of child pornography to and from the internet.

## Forensic Analysis of Mr. Kaufman's Computers

10.   Mr. Kaufman's computers, hard drives and other storage devices that were seized during the execution of the search warrant at the Premises were forensically examined in the Computer Forensics Laboratory, Department of Homeland Security, U.S. Immigration &

Customs Enforcement, Homeland Security Investigations.  The Forensics Laboratory issued a report dated November 6, 2013 (the "Report").

11.  According to the Report:

    a.  The devices that contained Mr. Kaufman's collection of child pornography are the Apple MacBook Pro laptop, serial number WQ024R7QATM; the 1 TB Seagate Expansion External Drive, serial number 2GHKYPTM; and the 320 GB Seagate Expansion Portable Drive, serial number 2GH2YGR6. The primary location for the child pornography collection is a folder on the desktop of Mr. Kaufman's computer named "Vids". Within the "Vids" folder the files are organized into the categories:

        i.  Girls
        ii.  Jerking/Cum
        iii.  Kelly
        iv.  NEW
        v.  Newer
        vi.  Pee/Shower/Play
        vii.  Play/Suck/Sex
        viii.  Rape/Spank
        ix.  Spongebob
        x.  SS
        xi.  Toys/Animation

    b.  Variations of this same folder structure are found on the 1 TB and 320 GB Seagate Expansion External Drives in back-ups of the MacBook Pro.  Excluding duplicates, there are 658 unique files on all three devices combined.  Hash values for the files on the three devices were submitted through the National Center for Missing and Exploited Children Law Enforcement Service Portal.  Of those hash values, 77 matched files containing images of an "Identified Child," 458 were "Recognized Hash Values," and 123 were "Unrecognized Hash Values."

4

c.  There are also 43 video files in the GigaTribe Downloads folder located at
    \1 Customer\Hard Drive\Users\koolkidlime96\Documents\GigaTribe
    Downloads\koolkidlime1991 and 3 video files in the Mac's native default
    downloads directory at \1 Customer\Hard Drive\Users\koolkidlime96\Downloads.

d.  The "SS" folder in the "Vids" folder contains screen shots of the other folders in
    the "Vids" folder. These screen shots show the contents of those folders in
    thumbnail views with the file name of each video file. The screen shots were
    shared via Skype to show chat partners what videos Mr. Kaufman had to share.
    The other user would then select from the thumbnails and titles in those screen
    shots which files they wanted Mr. Kaufman to send.

e.  The two accounts Mr. Kaufman used to trade child pornography on Skype were
    bob.smith4848 and koolkidlime96. Using the koolkidlime96 account, 89 unique
    screen shots were shared between 5/6/2011 and 5/20/2013. Using the
    bob.smith4848 account, 34 unique screen shots were shared between 1/16/2013
    and 6/25/2013.

f.  The files named in the affidavit supporting the application for a search warrant for
    the Premises that were downloaded by law enforcement using GigaTribe are
    present in Mr. Kaufman's collection. The files downloaded on October 22, 2012,
    were located at \1 Customer\Hard
    Drive\Users\koolkidlime96\Desktop\Vids\Jerking/Cum\[MB] Man_boy in
    woods.mpg, and \1 Customer\Hard Drive\Users\koolkidlime96\Desktop

\Vids\Jerking/Cum\Bibcam - boy13 wank and cum.avi. The files downloaded on

June 17, 2013, were located at \1Customer\Hard

Drive\Users\koolkidlime96\Desktop\Vids

\Jerking/Cum \mega cute cum 13yok.mov, and \1Customer\Hard Drive\Users\

koolkidlime96\Desktop\Vids\Jerking/Cum \10yo_masturb(4).wmv.

g. Mr. Kaufman also engaged in social media chats about his interest in young boys,

including the following:

| | | | |
|---|---|---|---|
| 11/01/2011 08:28:03 PM | (dungarvanlad) | (emilkaufman13) | u ever with a boy? |
| 11/01/2011 08:28:17 PM | (emilkaufman13) | (dungarvanlad) | um with boys 16 and older |
| 11/01/2011 08:28:18 PM | (emilkaufman13) | (dungarvanlad) | lol |
| 11/01/2011 08:28:39 PM | (dungarvanlad) | (emilkaufman13) | cool |
| 11/01/2011 08:28:47 PM | (dungarvanlad) | (emilkaufman13) | ever cam with younger |
| 11/01/2011 08:28:54 PM | (emilkaufman13) | (dungarvanlad) | yep i have |
| 11/01/2011 08:29:06 PM | (dungarvanlad) | (emilkaufman13) | nice u film them? |
| 11/01/2011 08:29:27 PM | (emilkaufman13) | (dungarvanlad) | well i recorded my screen when i cames with them |
| 11/01/2011 08:29:35 PM | (emilkaufman13) | (dungarvanlad) | cam* |
| 11/01/2011 08:29:44 PM | (dungarvanlad) | (emilkaufman13) | ;-);-) |
| 11/01/2011 08:29:49 PM | (emilkaufman13) | (dungarvanlad) | yep |
| 11/01/2011 08:30:00 PM | (dungarvanlad) | (emilkaufman13) | you want to get with younger? |
| 11/01/2011 08:30:11 PM | (emilkaufman13) | (dungarvanlad) | yea |
| 11/01/2011 08:30:24 PM | (emilkaufman13) | (dungarvanlad) | but i have no one around |
| 11/01/2011 08:30:31 PM | (dungarvanlad) | (emilkaufman13) | same as me |
| 11/01/2011 08:30:38 PM | (dungarvanlad) | (emilkaufman13) | its risky too |

Summary Number of Images and Nature of Mr. Kaufman's Child Pornography

12. Mr. Kaufman's child pornography collection on his computers and storage devices

included:

a. Images of minors under the age of 12 (USSG § 2G2.2(b)(2));

b. Material that portrays sadistic or masochistic conduct of a minor under the age of

12 (USSG § 2G2.2(b)(4));

c. At least 300 images but fewer than 600 images of child pornography (USSG

§ 2G2.2(b)(7)(C)); and

d. Among the images of child pornography that Mr. Kaufman possessed were

computer files with the following file names:

6

     i.   [MB]!!!!!NEW!!!!!Little devon 10yo cum in father's mouth –HOT!!!.avi;

    ii.   10yo_masturb(4).wmv;

   iii.   (yamad)Little Boy Bondage 11Yo And Men Full Version - Gay Pedo Pthc.mpg; and

   iv.   12yo boy brutal rape w 14in dildo.wmv.

<u>Mr. Kaufman's Statement to HSI Special Agents</u>

13.    During the execution of the search warrant on June 26, 2013, HSI Special Agents conducted a voluntary interview of Mr. Kaufman relating to his possible involvement in the ongoing child pornography investigation.

14.    Mr. Kaufman immediately stated that he has a bad habit of trading videos of child pornography and stated, "All I need is my parents to find out." Mr. Kaufman said that he started watching videos of child pornography when he was young. Mr. Kaufman stated that he was adopted and that his parents told him that he was sexually abused when he was younger. Mr. Kaufman stated that he wants to stop, but he cannot. Mr. Kaufman stated that child pornography is appealing to him, because it brings him back to his childhood, however he is not sure if it is sexual or not. Mr. Kaufman prefers to view child pornography of young boys, 11 to 16 years of age.

15.    According Mr. Kaufman, his interest in child pornography started out of a curiosity when he was approximately 11 years old. He has discussed his like for child pornography with his parents after they found a child pornography photo related to an online chat Mr. Kaufman had with a young boy. Mr. Kaufman stated that his parents were very upset and did not want him going to jail.

16.     Mr. Kaufman further stated that he uses Skype and Giga Tribe to share videos of child pornography.  When discussing Giga Tribe, he stated downloading a lot of files could be a "Big FBI tip right there."  Mr. Kaufman also stated that he uses an Apple laptop (located during SW) to download and share videos of child pornography. His online ID is koolkidlime1991.  Mr. Kaufman stated that he saves his child pornography to an external hard drive (located during the execution of the search warrant) and "I don't know why I saved that."

17.     Mr. Kaufman stated that only he has access to and uses the Apple Laptop.  He uploads and shares his videos of child pornography with people online. His account is not password protected.  People online go right to a specific child pornography file he has and they can download it. Often times Mr. Kaufman can see the file being downloaded by another user on a "download bar."

18.     Mr. Kaufman also stated: "I didn't want [to] be some kind of pedophile."

19.     Mr. Kaufman further stated:

   a.   He has been using Giga Tribe for a couple and years and his password may be Maxall13."

   b.   He has an apartment in Hamden, CT, but he did not believe there was any child pornography at the residence, because he recently cleaned his computer.

   c.   He considers kids between 10 and 16 under age.

   d.   He has approximately 300 to 400 videos/files of child pornography.

   e.   He uses chat rooms that are known for sharing only child pornography.

   f.   He considers chat rooms risky and believed they were being monitored by security people.

8

g. He mostly uses "321 Chat Zone" and "Chat Zone," where he believes 98% of the files shared are child pornography.

h. He traded some child pornography videos last night.

i. He downloaded child pornography yesterday from a user who had 5,000 or 6,000 videos. Not all of the videos the person had were child pornography, but all of the videos he downloaded were child pornography. The person had videos of girls and boys, and some involving babies.

j. He has a buddy list of approximately 20 trusted people on Giga Tribe where they swap child pornography videos.

k. He is mostly interested in child pornography videos of 11 to 13 year old boys.

l. When looking for files to download Mr. Kaufman searches for titles like "boys sucking" or "13 year old boy experiments."

m. If it sounds good to him, he downloads the videos. Half of what he downloads is poor quality. He prefers good sound and picture, with one angle, with the ideal age of 10 to 14 year olds.

n. He prefers English videos, because "it makes it real" and he likes videos showing boys nude and masturbating.

o. He does not like videos of young boys giving oral sex, he stated, because "mouth on dick, nothing really happening."

p. He often masturbates while watching the child pornography.

20. Mr. Kaufman stated he is able to separate his child pornography activities from the rest of his life. He stated that merely seeing young boys does not turn him on; he gets aroused when a child is doing something sexual.

21. Mr. Kaufman stated that many people online have asked if he wanted to meet kids. Mr. Kaufman stated that has thought about meeting kids, but he has a fear of getting caught.

22. Mr. Kaufman stated that a couple years ago he was involved in a chat with a 13 year old boy.  Mr. Kaufman stated he sent a facial picture to the boy and the boy sent Mr. Kaufman nude full body photos of himself. Mr. Kaufman and the boy had chats about meeting up, but it never happened because he was afraid of getting caught.